■ 1725 YORK VENTURE, Appellant, v MICHAEL BLOCK et al., Respondents. [884 NYS2d 6]—

Order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered May 8, 2008, which reversed a judgment of the Civil Court, New York County (Peter M. Wendt, J.), entered on or about May 26, 2006, awarding possession of the subject apartment to petitioner landlord upon a finding that respondent tenants breached the parties' lease by harboring a dog without petitioner's written permission, and remanded the matter to Civil Court for further proceedings on the issue of the dog's vicious propensities, unanimously affirmed, without costs.

Petitioner owns unsold shares pertaining to 12 of the approximately 230 apartments in the subject residential cooperative building, including the shares to the apartment occupied by respondents as rent-stabilized tenants since 1977. Prior to the building's conversion to cooperative status in 1982, the staff was employed by ERT Management, Inc. (ERT). After the conversion, the cooperative corporation retained Gumley-Haft, Inc. to manage the building and staff on its behalf. ERT remains the managing agent for the unsold sponsor units, although it no longer employs any building staff; Gumley-Haft bills ERT for the maintenance due on petitioner's apartments. An ERT employee testified that her company sometimes calls upon building staff to make repairs to its apartments and other times uses

outside contractors. The same employee also admitted that petitioner "relies on building staff employed by Gumley-Haft to provide information concerning what's going on in the building on occasion."

Respondents' lease incorporates by reference a provision prohibiting pets without the written permission of petitioner. Nevertheless, without petitioner's permission, respondents owned a Staffordshire terrier from 1995 until its death in April 2005. On June 20, 2005, respondents adopted a mixed breed pit bull, but did not request petitioner's permission. The doormen observed respondent Michael Block take the new dog out for a walk two or three times per day.

On October 8, 2005, the dog leapt at and clawed a tenant shareholder, causing a slight puncture wound to the arm. The tenant shareholder informed the doorman on duty as well as Gumley-Haft, which forwarded the message to ERT. On October 17, 2005, petitioner sent respondents a 10-day notice to cure, followed by a 10-day notice of termination on November 2, and commenced the instant holdover proceeding on November 18. Thereafter, in December 2005, respondents' dog lunged at another tenant shareholder's dog, frightening two children, who jumped on a couch and began screaming.

Petitioner's failure to enforce the lease's "no-pet" clause with respect to respondents' first dog did not constitute a waiver of the provision as to their current pet (see *Park Holding Co. v Emicke*, 168 Misc 2d 133 [1996]).

Administrative Code of the City of New York § 27-2009.1 (b), the "Pet Law," states: "Where a tenant . . . openly and notoriously for a period of three months . . . harbors . . . a household pet . . . and the owner or his or her agent has knowledge of this fact, and such owner fails within this three month period to commence a summary proceeding or action to enforce a lease provision prohibiting the keeping of such household pets, such lease provision shall be deemed waived." In *Seward Park Hous. Corp. v Cohen* (287 AD2d 157 [2001]), this Court held that the subject building's maintenance personnel and porters, employees of the managing agent, and the security guards, employees of a company retained by the managing agent, were "agents" of the landlord and managing agent for purposes of the imputation of knowledge under the Pet Law statute. We rejected the landlord's narrow interpretation of the term "agent" and the landlord's reliance on the fact that neither it nor the managing agent required the building personnel to report animals, which would have allowed landlord to turn a "blind eye" to a tenant's open and notorious harboring of a pet and would have thwarted the statute's remedial purposes (see *id.* at 165-168).

With respect to this appeal, it is undisputed that the doormen learned that respondents possessed a dog more than three months before petitioner commenced the holdover proceeding. Nevertheless, petitioner asserts that the doormen should not be deemed its "agents" because they are not employees of ERT, petitioner's managing agent, but rather are employees of Gumley-Haft, the cooperative's managing agent. However, pursuant to General Business Law § 352-eeee (3): "All dwelling units occupied by non-purchasing tenants shall be managed by the same managing agent who manages all other dwelling units in the building . . . Such managing agent shall provide to non-purchasing tenants all services and facilities required by law on a non-discriminatory basis." In conformity with that statute, and the most efficient manner of running a building, one managing agent was designated to operate the entire building and oversee the staff, without discrimination toward the nonpurchasing tenants.* The building employees serve all the residents, not only the shareholders. Even though petitioner does not directly employ the doormen, porters, and superintendent, those personnel serve the nonpurchasing residents, just as they do the shareholder tenants. There is no evidence that the building employees or Gumley-Haft refuse to communicate with petitioner. On the contrary, an ERT employee conceded that petitioner relies on building staff for some information, and when the tenant who was attacked by respondents' dog made a complaint to the doormen and Gumley-Haft, that report was immediately forwarded to ERT. Thus, as in *Seward Park*, the building employees were the ones best situated to acquire knowledge of whether a tenant was harboring a pet, and petitioner should not be able to defeat the remedial purposes of the Pet Law by pointing to its own failure to instruct or request the employees to report the presence of animals. Concur—Gonzalez, P.J., Andrias, Buckley and Acosta, JJ.

---

* The fact that petitioner chooses to also utilize a managing agent with respect to issues solely concerning the units it owns does not relieve the cooperative's managing agent of its obligations. As petitioner points out, the General Business Law does not preclude individual shareholders from hiring anyone to attend to matters within their own apartments.